**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CONN'S, INC., *et al.*,[1] | Case No. 24-33357 (ARP) |
| Debtors. | (Jointly Administered) |
| CONN APPLIANCES, INC. | |
| Plaintiff, | |
| v. | Adversary No. _____ |
| SYNCHRONY BANK | |
| Defendant. | |

**ORIGINAL COMPLAINT**

Plaintiff Conn Appliances, Inc. ("Plaintiff") files this *Original Complaint* (the "Complaint") against Defendant Synchrony Bank ("Synchrony" or "Defendant") and in support hereof, respectfully submits as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (E), and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases, together with the last four digits of each of the Debtor's federal tax identification number, are: Conn's, Inc. (2840), Conn Appliances, Inc. (0706), CAI Holding, LLC (2675), Conn Lending, LLC (9857), Conn Credit I, LP (0545), Conn Credit Corporation, Inc. (9273), CAI Credit Insurance Agency, Inc. (5846), New RTO, LLC (6400), W.S. Badcock LLC (2010), W.S. Badcock Credit LLC (5990), and W.S. Badcock Credit I LLC (6422). The Debtors' service address is 2445 Technology Forest Blvd., Suite 800, The Woodlands, TX 77381.

2.　　In accordance with Bankruptcy Local Rule 7008-1, Plaintiff consents to the entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## PARTIES

3.　　Plaintiff Conn Appliances, Inc., a Debtor in the above-captioned Chapter 11 Cases, is a corporation organized under the laws of the State of Texas.

4.　　Defendant Synchrony Bank is a domestic federal savings bank with its principal place of business at 777 Long Ridge Road, Stamford, Connecticut 06902.  Defendant may be served with process by serving its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801, or wherever they may be found.

## FACTUAL BACKGROUND

*The Chapter 11 Cases*

5.　　On July 23, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended and modified, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").  Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession.

6.　　On August 26, 2024, the Court entered its *Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Form and Manner for Filing Proofs of Claim; (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* (the "Bar Date Order") in the Debtors'

Chapter 11 Cases.[2]  As defined in the Bar Date Order, the General Bar Date for filing proofs of claim in the Chapter 11 Cases is October 7, 2024 at 4:00 p.m. (prevailing Central Time).[3]

7.      On September 5, 2024, each of the Debtors filed their Schedules of Assets and Liabilities in the Chapter 11 Cases.  Synchrony's claim was scheduled by the Debtors as contingent, unliquidated, disputed, and in an undetermined amount.[4]

8.      Pursuant to the Bar Date Order, Synchrony filed a general unsecured proof of claim in the Chapter 11 Cases on October 7, 2024.  Synchrony's proof of claim is docketed with the Debtors' claims and noticing agent as Claim No. 10515 (the "Claim").  Synchrony asserts that the Claim amount is "2,000,000.00 unliquidated."

***The Debtors' Businesses***

9.      The Debtors have served as a leading retailer offering a broad selection of quality furniture and mattresses, home appliances, consumer electronics, home office products, accessories, and seasonal items from leading global brands across a wide range of price points in addition to proprietary credit solutions for its core consumers.  The Debtors operate an integrated and scalable business through their retail stores and websites.  The Debtors' credit offerings have historically provided attractive financing solutions to a large population of consumers, including to those with more limited credit alternatives.

10.      At the Petition Date, the Debtors employed approximately 3,800 full-time employees and 150 part-time employees in the United States, and operated retail facilities in 15 states, totaling 553 retail stores and 22 distribution and service facilities.

---

[2] *See* Main Case 24-33357, Docket No. 418.
[3] Bar Date Order, ¶ 1.
[4] *See* Main Case 24-33357, Docket No. 504, p. 56.

11.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Norman L. Miller in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[5] which is incorporated herein by reference.

*Plaintiff's Agreement With Defendant*

12.     On May 10, 2023 (the "Execution Date"), Plaintiff and Defendant entered into that certain Retailer Program Agreement (the "Agreement")[6] effective as of January 1, 2023 (the "Effective Date"). A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

13.     The Agreement governs the private label credit card program Synchrony provides to the Debtors (the "Program").[7] Under the Program, customers are provided an opportunity to finance through Synchrony the purchase of goods and services sold by the Debtors.[8]  The scope of the Agreement only covers approximately 170 Conn's-branded stores. It does not include the WSB stores, branded "Badcock Home Furniture & more", which were subsequently acquired by Conn's in connection with the WSB Merger.

14.     Pursuant to the Agreement, Synchrony is generally responsible for establishing and administering the credit card Program, including extending credit, issuing credit cards, and managing the customer accounts (the "Synchrony Accounts").[9]  The Debtors generally are required to promote the Program to customers, process credit applications, and deliver the purchased goods and services, all in accordance with the terms and conditions of the Agreement.[10]

---

[5]  Main Case 24-33357, Docket No. 3.

[6]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement or the First Day Declaration, as applicable.

[7]  **Exhibit A**, p. 1.

[8]  *Id*.

[9]  **Exhibit A**, § 1.

[10] *Id*. at § 2.

15.     Among other things, the Agreement provides that the Debtors will promptly transmit Charge Transaction Data to Synchrony related to all sales, charges and credits processed for transactions involving the Synchrony Accounts.[11]   Subject to certain netting procedures, if applicable, the Agreement requires Synchrony to remit the funds owed to the Debtors within two (2) business days of receipt of the Charge Transaction Data.[12]

16.     In addition, the Agreement provides for the establishment of a Marketing Fund to be maintained by Synchrony and used for the reimbursement of each party's marketing expenses in connection with implementing the Program.  The Agreement specifically requires Synchrony to reimburse the Debtors for the agreed marketing expenses that are incurred, and that the Debtors retain the right to require Synchrony to make such payments from the Marketing Fund when due under the Agreement.

*Defendant Refuses to Turnover Plaintiff's Funds*

17.     By written correspondence to the Debtors on July 25, 2024, immediately following the Petition Date, Synchrony requested that the Debtors stop all Synchrony Account sales and discontinue in-store cash collections under the Program.

18.     The Debtors responded via letter to Synchrony on August 12, 2024 and explained that all sales and in-store cash collections on Synchrony Accounts had since been discontinued, but the Debtors had yet to receive funds from Synchrony related to Synchrony Account sales dating back to before the Petition Date.  The Debtors demanded that Synchrony promptly remit the funds owed to the Debtors for sales under the Synchrony Accounts.

19.     Pursuant to the Agreement, and as of the filing of this Complaint, the amount owed by Synchrony to the Debtors for performance under the Program is not less than $1,551,256, net

---

[11] *Id*. at § 4(a).
[12] *Id*.

of all discounts, customer returns and other accounting adjustments in accordance with the Agreement. All corresponding Charge Transaction Data was timely transmitted to Synchrony in accordance with the Agreement. Accordingly, the Debtors believe that Synchrony is wrongfully withholding at least $1,551,256 which is due and owing to the Debtors.

20.      Additionally, the Debtors are owed approximately $391,705 in reimbursable marketing expenses from the Marketing Fund controlled by Synchrony. As of the filing of this Complaint, Synchrony has failed to make the outstanding payments due and owing to the Debtors for reimbursement of the agreed marketing expenses.[13]

21.      The funds belonging to the Debtors and the debt owed by Synchrony to the Debtors both constitute property of the estate under section 541 of the Bankruptcy Code.

22.      Synchrony continues to maintain possession over the funds belonging to the Debtors and, despite the Debtors' demands, has refused to turn over this estate property.

23.      On August 23, 2024, Synchrony filed the *Motion of Synchrony Bank for Relief From the Automatic Stay to Allow Recoupment or Alternatively Setoff* (the "Setoff Motion") in the Chapter 11 Cases.[14] The Setoff Motion seeks the Court's authority to recoup or, alternatively, setoff Synchrony's alleged prepetition and post-petition claims against the Debtors – all of which are contingent, unliquidated and disputed – outside the claims allowance process.

24.      On October 4, 2024, the Debtors filed their *Response and Objection to Motion of Synchrony Bank for Relief From the Automatic Stay to Allow Recoupment or Alternatively Setoff* (the "Response").[15]

---

[13] Plaintiff believes discovery will reveal that Defendant may be in possession of additional funds belonging to the Debtors, separate and apart from the funds set forth above. Plaintiff reserves all rights to amend, modify and supplement the amounts set forth in this Complaint and to seek additional relief from the Court in the future.

[14] Main Case 24-33357, Docket No. 400.

[15] Main Case 24-33357, Docket No. 771.

**CAUSES OF ACTION**

*Count 1:  Turnover – 11 U.S.C. § 542*

25.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

26.     Section 541 of the Bankruptcy Code provides that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(1), (7).

27.     Section 542(a) of the Bankruptcy Code requires "an entity . . . in possession, custody, or control, during the case, of property that the [debtor-in-possession] may use, sell, or lease under section 363 of this title . . . [to] deliver to the [debtor-in-possession], and account for, such property or the value of such property . . . ."  11 U.S.C. § 542(a).

28.     Further, Bankruptcy Code section 542(b) states that an "entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order shall pay such debt to, or on the order of, the [debtor-in-possession], except to the extent that such debt may be offset under section 553 of this title against a claim of the debtor."  11 U.S.C. § 542(b).  The Bankruptcy Code defines "debt" as "liability on a claim."  *Id*. at § 101(12).

29.     As described above, pursuant to Bankruptcy Code section 542(a), Defendant is an entity in possession of estate property, consisting of at least $1,551,256 in Program-related payments and $391,705 in reimbursable marketing expenses.

30.     Alternatively, pursuant to Bankruptcy Code section 542(b), Defendant owes a debt to Plaintiff consisting of at least $1,942,961.  The debt owed by Defendant to Plaintiff is matured and payable on demand.

7

31.     All such funds rightfully belong to the Debtors and, at a minimum, the Debtors'

estates have an equitable interest in and to such funds. This amount is not subject to setoff under

section 553 of the Bankruptcy Code or applicable provisions of the Agreement.[16]

32.     Defendant is in possession of these funds and has failed and refused to turnover

these funds despite informal requests and formal demands.

33.     These funds are property of the Debtors' estates that the Debtors may use in

accordance with section 363 of the Bankruptcy Code.  Accordingly, the Court should enter an

order compelling Defendant to turnover the funds for the benefit of the Debtors' bankruptcy estates

and provide an accounting to Debtors with respect to such funds pursuant to section 542 of the

Bankruptcy Code.

*Count 2: Breach of Contract*

34.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

35.     On the Execution Date, Plaintiff and Defendant entered into a valid and enforceable

Agreement effective as of the Effective Date.

36.     The Agreement provides, in pertinent part, that Defendant will: (i) deposit within

two (2) business days of receipt of the Charge Transaction Data to a bank account designated by

Plaintiff all charges reflected in the Charge Transaction Data; [17]  and (ii) reimburse Plaintiff's

marketing expenses for the Program within thirty (30) days of the submission of an invoice. [18]

Defendant is further required to meet the established minimum Service Level Standards, and to

comply with the detailed reporting requirements applicable to the Synchrony Accounts.[19]

37.     Plaintiff performed its obligations under the Agreement.

---

[16] *See* **Exhibit A**, § 4(a).
[17] **Exhibit A**, § 4(a).
[18] **Exhibit A**, p. 2.
[19] *Id*. at §§ 1(f) and (g).

38.     Upon information and belief, Defendant materially breached the Agreement by, among other things, (i) failing to remit funds that are detailed in the Charge Transaction Data, are currently due and owing, and rightfully belong to Plaintiff, (ii) failing to timely remit funds that are detailed in Plaintiff's marketing expense invoices, are currently due and owing, and rightfully belong to Plaintiff; (iii) failing to timely and accurately account for all funds belonging to Plaintiff in accordance with the Program reporting requirements and Marketing Fund reimbursement requirements, (iv) failing to implement, maintain and ensure proper collection, settlement and remittance procedures upon receipt of Charge Transaction Data and marketing expense invoices from Plaintiff, and (v) failing to timely and accurately account for credits, charge-backs, Retailer Fees and other applicable adjustments to the Charge Transaction Data.

39.     Defendant's breach of the Agreement caused injury to Plaintiff, which resulted in at least $1,942,961 in compensatory damages, for which Plaintiff is entitled to recover.

40.     Plaintiff made a demand for the payment of the amounts due and owing by Defendant.  More than thirty (30) days will elapse before trial since the demand was made, and Defendant has failed and refused to make payment to Plaintiff.

41.     Because of Defendant's breach of the Agreement, Plaintiff has been forced to retain the undersigned counsel to protect Plaintiff's legal rights and to prosecute this action on its behalf. Plaintiff is, therefore, entitled and seek to recover their reasonable attorneys' fees under section 38.001 *et seq*. of the Texas Civil Practice and Remedies Code.

42.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

*Count 3: Objection to Claim – 11 U.S.C. § 502*

43.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

44.     Rule 3007 of the Federal Rules of Bankruptcy Procedure authorizes Plaintiff to include the objection to Defendant's Claim in this Complaint.  *See* FED. R. BANKR. P. 3007(b).

45.     Section 502 of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once there is an objection to a proof of claim, the Bankruptcy Code mandates a determination of the amount of the claim absent certain exceptions that are inapplicable here.  *See* 11 U.S.C. § 502(b).

46.     Defendant's Claim is based on contingent and unliquidated amounts that Defendant alleges are owed by Plaintiff under the Agreement.  A copy of Defendant's Claim is attached hereto as **Exhibit B** and is incorporated herein by reference.  While Defendant asserts that the Claim amount is $2 million, the addendum to the Claim continues to assert a right to offset Plaintiff's claims against Defendant in an undetermined amount.  According to Defendant, that amount was at least $4,311,990.28 as of August 6, 2024 (*i.e.*, inclusive of post-petition amounts) as previously described in the Setoff Motion filed in the Chapter 11 Cases.[20]  However, this amount "has grown considerably since the Setoff Motion was filed and is expected to continue to grow."[21]

47.     Plaintiff objects to the Claim because it is based on Plaintiff's alleged breach of the Agreement but fails to adequately set forth a basis for the Claim or its calculation.  Plaintiff further objects to the extent that Defendant's asserted Claim amount is net of all alleged prepetition and post-petition setoff amounts.  As explained above, and separately in the Response to the Setoff Motion, Plaintiff disputes that any amounts are due to Defendant under the Agreement as well as

---

[20] **Exhibit B**, Addendum ¶ 9.
[21] *Id*.

Defendant's calculation of its Claim and corresponding setoff amount. Defendant's Claim is not adequately supported. Plaintiff is unable to infer what the actual bases or supporting calculations for the Claim may be.

48.     Upon information and belief, Plaintiff did not owe Defendant the amount set forth in the Claim as of the Petition Date. Rather, Defendant owes a debt to Plaintiff and continues to withhold funds that properly belong to the Debtors under the Agreement. As a result, Plaintiff objects to the Claim and requests that the Claim be disallowed in its entirety or otherwise allowed in a significantly reduced amount as ordered by the Court.[22]

49.     Alternatively, and to the extent the Claim is not disallowed or otherwise reduced, Plaintiff requests that the Court estimate Defendant's contingent and unliquidated Claim against Plaintiff. The Court is authorized to estimate for purposes of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case …" 11 U.S.C. § 502(c)(1).

50.     Estimation of Defendant's Claim is needed to determine the final allowed amount of the Claim after appropriate offsets in accordance with the parties' respective rights under the Agreement.

51.     Accordingly, Plaintiff submits that estimation of its liability on the Claim, if any, is necessary and appropriate and in the best interests of the Debtors, their estates, creditors, and all parties in interest.

---

[22] This Claim objection is limited to the grounds stated herein and is without prejudice to the Debtors' rights to object to the Claim on any additional grounds. The Debtors expressly reserve all further substantive or procedural objections and the right to amend or supplement the objection as additional information is discovered.

## **PRAYER**

For these reasons, Plaintiff asks for a judgment against Defendant for the following:

        (a)      Turnover of all property of the Plaintiff, including the funds due under the Agreement in an amount not less than $1,942,961;

        (b)      Actual damages in an amount of no less than $1,942,961;

        (c)      Disallowance of Defendant's Claim in its entirety;

        (d)      Reasonable attorneys' fees;

        (e)      Prejudgment and post-judgment interest;

        (f)      Costs of suit; and

        (g)      All other legal and equitable relief to which Plaintiff is justly entitled.

Respectfully submitted on this 9th day of October, 2024.

                    **OKIN ADAMS BARTLETT CURRY LLP**

                    By:      /s/ *Matthew S. Okin*
                         Matthew S. Okin
                         Texas Bar No. 00784695
                         Email: mokin@okinadams.com
                         Ryan A. O'Connor
                         Texas Bar No. 24098190
                         Email: roconnor@okinadams.com
                         Madeline Schmidt
                         Texas Bar No. 24130309
                         Email: mschmidt@okinadams.com
                         1113 Vine St., Suite 240
                         Houston, Texas 77002
                         Tel: 713.228.4100
                         Fax: 346.247.7158

                    **ATTORNEYS FOR THE DEBTORS**